520 So.2d 69 (1988)
Sylvina JUSTE, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, State of Florida, Ofr/Dpaf, Appellee.
No. BQ-466.
District Court of Appeal of Florida, First District.
February 8, 1988.
*70 Sally G. Schmidt, Florida Rural Legal Services, Belle Glade, for appellant.
K.C. Collette, West Palm Beach, for appellee.
JOANOS, Judge.
Sylvina Juste appeals an order of the Office of Public Assistance Appeal Hearings which disqualified her from participation in the food stamp program for a period of six months. The only issue in this appeal is whether the hearing officer's decision is supported by clear and convincing evidence. We reverse.
On November 14, 1985, the Department of Health and Rehabilitative Services (HRS) filed a petition seeking to disqualify Juste from the food stamp program for a period of six months. HRS alleged that Juste failed to report earned income to her food stamp eligibility worker. On March 24, 1986, the hearing officer authorized the requested sanction and directed HRS to pursue repayment of the overissuance. Juste appealed, arguing lack of proper notice of the hearing. HRS conceded error, and the case was reversed and remanded for further proceedings.
On September 25, 1986, a second hearing was held on the HRS petition. Although Juste was represented by counsel at the hearing, she was not present. The specific allegation advanced by HRS was that Juste had obtained employment at the United States Sugar Corporation (USSC), and failed to report those wages on her food stamp application, and also failed to notify the food stamp office. The evidence presented by HRS to establish that Juste failed to report earned income consisted of fifteen documents and the testimony of a public assistance worker specializing in food stamp fraud.
The evidence offered to establish the allegation that Juste failed to report earned income included (1) a letter from HRS to USSC requesting income verification; (2) a computer printout of wages, unemployment benefits, and social security payments generated by the Office of the Auditor General; (3) a USSC employment record; and (4) an affidavit of work record allegedly reflecting Juste's earnings at USSC. The affidavit contains the unnotarized signature of Ed Jones, paymaster at USSC. The food stamp fraud specialist testified that she traveled to USSC, and verified Juste's employment with Ed Jones, the USSC paymaster. The food stamp fraud specialist stated she was in the paymaster's office when he prepared an affidavit allegedly showing appellant's earning record from USSC. In addition, the specialist stated she compared the original time records with the data contained in Exhibit 14(c), that is, the earnings record, and that the data was correct. The HRS food stamp fraud specialist further stated that the original time records from which Exhibit 14(c) was compiled would not be presented at the hearing, the custodian of those records would not be present to testify, and that Exhibit 14(c) had been prepared specifically for the hearing at issue in this case.
Under cross examination, the HRS food stamp fraud specialist testified that she had no personal knowledge of the data contained in the computer printout from the Auditor General's office. Furthermore, the specialist stated that the original records from which the computer printout was compiled would not be introduced at the hearing, and that the custodian of those records would not be present to testify. The food stamp fraud specialist also testified that there have been situations in which an attempt to verify income by means of a social security number proved to be inaccurate, because another individual used that social security number.
On November 3, 1986, the hearing officer entered an order finding that Juste had *71 committed food stamp fraud, and imposed a six-month disqualification from the program.
We note at the outset that HRS is the state agency charged with administering Florida's food stamp program. Under the federal guidelines, HRS is obligated to investigate any allegation that the program is being violated. See 7 C.F.R. § 273.16(a)(1) (1986). The specific violation at issue in this appeal is an intentional program violation.[1] In an intentional program violation determination, the standard of proof is clear and convincing evidence, rather than the preponderance of the evidence standard generally applicable in administrative proceedings. 7 C.F.R. § 273.16(3)(6) (1986).[2]
The resolution of this case turns upon the sufficiency of hearsay evidence to support a finding of fact in an administrative proceeding. The Administrative Procedure Act and the concomitant HRS rules specify the extent to which hearsay evidence may be relied upon in an administrative proceedings. Section 120.58(1)(a), Florida Statutes (1985), provides in pertinent part:
Hearsay evidence may be used for the purpose of supplementing or explaining other evidence, but it shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions. (emphasis supplied).
The concomitant HRS rule, Florida Administrative Code Rule 10-2.060(1), states in part:
(1) The Hearing need not be conducted according to the technical rules relating to evidence and witnesses. Any relevant evidence, including hearsay which has substantial probative effect, shall be admitted if it is the sort of evidence on which reasonable prudent persons are accustomed to rely in the conduct of their affairs, regardless of the existence of any common law or statutory rules which might make improper the admission of such evidence over objection in civil action; provided, however, hearsay evidence shall not be sufficient in itself to support a finding unless it would be admissable [sic] over objection in civil actions. (emphasis supplied).
See also Harris v. Game and Fresh Water Fish Commission, 495 So.2d 806, 808 (Fla. 1st DCA 1986)  "In administrative hearings, hearsay evidence may be used for the purpose of supplementing or explaining other evidence, but it shall not be sufficient in itself to support a finding unless it would be admissible over objection in a civil action." Accord University of North Florida v. Unemployment Appeals Commission, 445 So.2d 1062 (Fla. 1st DCA 1984); Pasco County School Board v. Public Employees Relations Commission, 353 So.2d 108, 120 (Fla. 1st DCA 1977).
For evidence to be admissible under one of the exceptions to the hearsay rule, it must be offered in strict compliance with the requirements of the particular exception. For example, hearsay evidence falling within the purview of the business records act is admissible only if the custodian or other qualified witness is available to testify in court concerning the recorded information. § 90.803(6), Fla. Stat. (1985);[3] *72 R & W Farm Equipment Co., Inc. v. Fiat Credit Corporation, 466 So.2d 407 (Fla. 1st DCA 1985); Brown v. State, 389 So.2d 269, 270 (Fla. 1st DCA 1980); Van Zant v. State, 372 So.2d 502 (Fla. 1st DCA 1979). By the same token, hearsay evidence is admissible under the public records exception, only where the duty to make or maintain the document is imposed by statute or rule, and the disputed document is one that is regularly prepared. § 90.803(8), Fla. Stat. (1985);[4]Desmond v. Medic Ayers Nursing Home, 492 So.2d 427 (Fla. 1st DCA 1986); University of North Florida v. Unemployment Appeals Commission, 445 So.2d 1062 (Fla. 1st DCA 1984).
The evidence offered in this case to establish that Juste failed to report earned income is similar to the evidence offered as grounds for termination of employment in Harris v. Game and Fresh Water Fish Commission, supra. In that case, the evidence offered in support of the employee's dismissal consisted of the agency investigator's testimony concerning his interviews with various persons, and the investigator's review of Georgia court documents. In addition, a memo prepared by the investigator for the executive director of the agency was admitted at the hearing without objection. On appeal, the agency argued the report was admissible under the business records exception. This court disagreed, finding that even if the agency's failure to lay a proper predicate could be overcome, the relevant information in the report was hearsay, and "a hearsay statement which includes another hearsay statement is admissible only when both statements conform to the requirements of a hearsay exception." Harris, 495 So.2d at 809. See also Ehrhardt, Florida Evidence § 90.805 (2d ed. 1984); Van Zant v. State, 372 So.2d 502 (Fla. 1st DCA 1979). Concluding that the information relied upon to support the employee's dismissal constituted hearsay which did not fall under any exception to the hearsay rule, this court reversed the agency's order as unsupported by competent substantial evidence.
In the case before us, the evidence relied upon to support Juste's disqualification from the food stamp program consisted of an unsworn statement prepared by the paymaster at USSC, the testimony of the HRS food stamp fraud specialist that she witnessed the paymaster prepare the statement and that she viewed the company records, and a computer printout from the Auditor General's office. Although arguably the computer printout could be considered a public record, its reliability is placed in doubt by the testimony of the HRS specialist, who stated that errors sometime occur when social security numbers are relied upon to trace individual earnings.
As supplemental authority, HRS has cited Department of General Services v. English, 509 So.2d 1198 (Fla. 1st DCA 1987), in which this court approved the use of hearsay evidence to support a finding of misconduct on the job. The English decision is inapposite to this case, however, since in English the chief of personnel management testified before the appeals *73 referee as to matters within his personal knowledge and as to information in his files. In this case, no one from USSC was present to testify concerning the documents offered to support the allegation that Juste failed to report earned income. Furthermore, the HRS food stamp fraud specialist acknowledged she had no personal knowledge regarding the information contained in the USSC file.
HRS tacitly acknowledges the evidence relied upon to support the hearing officer's order is uncorroborated hearsay, but urges affirmance on the basis of harmless error. In the circumstances, we do not deem the error harmless. A finding of food stamp fraud has significant economic implications for the food stamp recipient and his or her dependents. In addition, such a finding poses the threat of punitive sanctions as well. We find that the hearsay evidence offered in this case is not sufficient to establish by clear and convicting evidence that Juste intentionally failed to report earned income.
Accordingly, the hearing officer's decision is reversed.
SMITH, C.J., and WENTWORTH, J., concur.
NOTES
[1] The Code of Federal Regulations explains an intentional program violation determination thusly:

For purposes of determining through administrative disqualification hearings whether or not a person has committed an intentional program violation, intentional Program violations shall consist of having intentionally: (1) Made a false or misleading statement, or misrepresented, concealed or withheld facts, or (2) committed any act that constitutes a violation of the Food Stamp Act, the Food Stamp Program Regulations, or any State statute relating to the use, presentation, transfer, acquisition, receipt, or possession of food stamp coupons ...
7 C.F.R. § 273.16(c) (1986).
[2] 7 C.F.R. 273.16(e)(6) (1986), provides:

The hearing authority shall base the determination of intentional Program violation on clear and convincing evidence which demonstrates that the household member(s) committed, and intended to commit, intentional Program violation as defined in paragraph (c) of this section.
See note 1.
[3] § 90.803(6)(a), Fla. Stat. (1985), provides in part, that:

[T]he following are not inadmissible as evidence, . ..
(6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY. 
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the sources of information or other circumstances show lack of trustworthiness. The term "business" as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
[4] § 90.803(8), Fla. Stat. (1985), provides in part, that:

[T]he following are not inadmissible as evidence, . ..
(8) PUBLIC RECORDS AND REPORTS.  Records, reports, statements reduced to writing, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report, excluding in criminal cases matters observed by a police officer or other law enforcement personnel, unless the sources of information or other circumstances show their lack of trustworthiness.